Cheryl Obedin RIVKIN, Plaintiff,

v.

Sydney Reese COLEMAN, Defendant.

No. 95 Civ. 6332 (RWS).

United States District Court,
S.D. New York.

Feb. 9, 1996.

Patrick M. Wall, New York City, for Plaintiff.

Jaroslawicz & Jaros, New York City (David Jaroslawicz, Robert J. Tolchin, of counsel), for Defendant.

SWEET, District Judge.

The defendant Sydney Reese Coleman ("Dr. Coleman") has moved for summary judgment pursuant to Rule 56, Fed.R.Civ.P., dismissing the first five of eight causes of action set forth in the complaint of plaintiff Cheryl Obedin Rivkin ("Mrs. Rivkin") in this diversity action. Upon the findings and conclusions which follow, summary judgment will be granted dismissing the first, third, and fifth causes of action.

### Prior Proceedings

Mrs. Rivkin filed her complaint on August 14, 1995, alleging eight causes of action against her former employer, Dr. Coleman, the first for an accounting under an alleged

joint venture, the second for breach of fiduciary duty, the third for fraud arising out of a material misrepresentation, the fourth for unjust enrichment, the fifth for interference with a contract entered with Buxton BioMedical Inc. ("Buxton") alleged to have been entered into in the course of the joint venture. The remaining causes of action alleged claims based upon the violation of §§ 296 and 297 of the Executive Law of New York, a claim for incentive pay and damages for the failure to return personal property of Mrs. Rivkin on the occasion of her discharge.

Dr. Coleman filed the instant motion with supporting affidavits, and Mrs. Rivkin has submitted opposing affidavits and memoranda. The motion was argued and marked fully submitted on November 15, 1995.

*Facts*

The undisputed facts derived from Dr. Coleman's 3(g) statement, the complaint and the affidavits are that Dr. Coleman hired Mrs. Rivkin at a salary of $27,000 a year in August 1992 as an administrative assistant and office manager for his office, where he practiced plastic and reconstructive surgery. Mrs. Rivkin had been employed in a family business and at the time of hiring was a recent graduate of Mt. Holyoke College and had received an advanced degree in philosophy from Oxford University.

Dr. Coleman has developed a surgical technique which he has termed "lipoinfiltration" and "lipostructure." This technique transplants subcutaneous tissue within a patient's body, removing fat tissue from one part of the body (*e.g.*, the abdomen or buttock) and injecting it by means of a "cannula," a finely-measured syringe-like instrument, into other areas of the body. Dr. Coleman has a patent application pending for this technique and the cannula.

Part of the duties assigned to Mrs. Rivkin included an effort to locate a manufacturer to produce the cannula in accordance with Dr. Coleman's specifications. Dr. Coleman intended to teach others the technique and the use of the cannula.

Dr. Coleman retained Oleg Rivkin ("Mr. Rivkin"), an attorney and Mrs. Rivkin's husband, to perform various legal services in connection with the cannula project, including the patent application, as well as other matters. In March of 1995, Mr. Rivkin made a trademark application on Dr. Coleman's behalf as owner of the mark "lipostructure."

From July 1994 through August 1995, the effort to locate a manufacturer for the cannula was concentrated on Buxton Biomedical ("Buxton"), a manufacturer. Mrs. Rivkin conducted negotiations with Buxton personnel concerning the terms on which the product would be manufactured, and a prototype was developed. In June, 1995, these negotiations intensified, including consideration of the royalties to be paid by the manufacturer, and a proposal was made to Dr. Coleman based upon discussions with Mrs. Rivkin. Thereafter, the Buxton representative was told that another lawyer was representing Dr. Coleman, and a revised proposal was made by Buxton. On August 7, 1995, Dr. Coleman discharged Mrs. Rivkin.

Beyond these facts are serious areas of contention. According to Mrs. Rivkin, she and Dr. Coleman in November 1995, formed a joint venture to develop the cannula, the gross profits of which were to be divided 20% to her and 80% for him. Mrs. Rivkin contends that at the time of making this agreement Dr. Coleman falsely represented that he intended to perform the agreement. Dr. Coleman disputes the existence of the joint venture and denies making any false representations. It is undisputed that there is no writing codifying the venture.

Mrs. Rivkin claims the name for the techniques was coined by her, that Dr. Coleman fired her upon learning of her pregnancy, and that he failed to return personal property to her and failed to make incentive payments that had been agreed upon.

*Discussion*

**I. Standard for Summary Judgment**

The instant motion is brought pursuant to Rule 56. The Rule 56 motion for summary judgment is "an integral part" of the Federal Rules of Civil Procedure and facilitates the overall purpose of the Rules as stated in Fed.R.Civ.P. 1: namely, "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Ca-*

*trett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). A motion for summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Silver v. City Univ.,* 947 F.2d 1021, 1022 (2d Cir.1991). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991).

## II. *The Statute of Frauds Bars The Joint Venture Causes of Action*

■ While there is an undeniable issue of fact with respect to the existence of the joint venture agreement, there is no dispute that the agreement alleged by Mrs. Rivkin is oral and that it covered royalties resulting from the sale of the cannula. As such, it could not be performed within year. According to Mrs. Rivkin, the General Obligations Law § 5–701a(1) does not cover joint ventures, and New York cases are cited for the proposition.

Fortunately this issue was resolved in the careful opinion of the Honorable William C. Conner in *Halloran v. Ohlmeyer Communications Co.,* 618 F.Supp. 1214 (S.D.N.Y.1985). His characteristically complete opinion can serve as the authority for granting the dismissal of the joint venture claims. There as here, there was a factual dispute as to the agreement to form a joint venture, and Judge Conner concluded what must be concluded here; namely, that the plaintiff has satisfactorily alleged that an agreement was reached, again leaving aside for the moment whether or not the allegations are sufficient to establish an agreement to share losses.

With the parties in the similar posture as the parties here, it was held in *Halloran* that the Statute of Frauds barred enforcement of the putative joint venture.

Having concluded that an issue of fact exists as to whether there was an agreement between the parties, I next address defendants' argument that even if there were such an agreement between the parties, it would be unenforceable under the New York statute of frauds. N.Y.Gen. Oblig. Law § 5–701(a)(1) (McKinney 1978),[1] since it was not capable of performance within a year. Defendants' Memorandum at 8–12. The parties differ on whether the New York statute of frauds applies to joint venture agreements, and each side has cited cases in support of its position. Although neither party cited the case to the Court, *Ebker v. Tan Jay Int'l, Ltd.,* 739 F.2d 812 (2d Cir.1984), is controlling on this issue. As Judge Friendly observed,

> Despite some sweeping pronouncements to the effect that the New York statute of frauds, N.Y.Gen.Oblig. Law § 5–701(a)(1), does not apply to joint ventures, these must mean only that a writing is not required simply because the transaction is a joint venture, and the statute must apply to joint ventures having a stated term of more than one year, as the plain language of § 5–701(a) of the New York General Obligations Law dictates.

*Id.* at 827. Similarly, in *Chromalloy Am. Corp. v. Universal Hous. Sys. of Am. Inc.,* 495 F.Supp. 544, 550–51 & n. 8 (S.D.N.Y. 1980), *aff'd. mem.,* 697 F.2d 289 (2d Cir. 1982), Judge Broderick explained that those cases suggesting that joint ventures are outside the scope of the statute of frauds are cases in which the *subject matter* of the joint venture agreement, and not the joint venture agreement itself, was within the statute.

---

1. Section 5–701(a)(1) provides that:
    [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

Nonetheless, plaintiff argues that the oral agreement with Ohlmeyer was capable of performance within a year and is therefore outside the scope of the statute. Plaintiff's Memorandum at 5–11. In support of this argument, Halloran states in his affidavit in opposition to the instant motion that the agreement contemplated "one show, a show which ... could easily have [been] produced within one year of [the] agreement," and did not include spinoffs, future sales, or "profits beyond one year of the making of [the] agreement." Halloran Aff. ¶ 21 (emphasis in original).

However, Halloran's factual claims in his affidavit directly contradict his earlier deposition testimony. Halloran repeatedly testified at his deposition that Skins was *not* to be a "one-shot deal." Halloran Dep. at 45, 50, 86. Rather, the agreement contemplated a "long-range plan" for an "annual" and "ongoing" program. *Id.* at 14, 15, 17, 44, 47, 50–51. Exploitation of Skins was to continue for "eternity," *id.* at 16, and would include rebroadcasts of the initial program, *id.* at 106, as well as "spinoffs" "done under various formats, with different people and different places in the world," *id.* at 17; *see also, e.g., id.* at 14, 15, 35, 44, 45–46, 48, 50, 60, 105. Halloran and Ohlmeyer were to be partners "forever" on the Skins venture. *Id.* at 164–65.

The Court of Appeals for the Second Circuit has held that such a discrepancy between deposition testimony and an affidavit made after a motion for summary judgment will not preclude summary judgment:

> If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.

*Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969); *see also Reisner v. General Motors Corp.,* 671 F.2d 91, 93 (2d Cir.), *cert. denied,* 459 U.S. 858, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982); *Schwimmer v. Sony Corp. of Am.,* 637 F.2d 41, 45 (2d Cir.1980); *McGhan,* 608 F.Supp. at 286. Plaintiff has made no attempt to explain the discrepancy between his affidavit and his deposition testimony nor has he presented supporting facts indicating that his prior testimony should be discredited. In light of the clear case law in this circuit, the factual claims in his affidavit must be disregarded, and, for purposes of the instant motion, the oral joint venture agreement must be assumed to have been for a term in excess of a year.

However, this does not, as defendants argue, necessarily dispose of the case. As Judge Friendly explained in *Ebker,* "the only effect of the statute [of frauds] where the [joint venture] agreement has been wholly or partially executed, is to convert it into a partnership at will, wherein a partner may bring an action in equity to call his copartner to account." 739 F.2d at 828. Here, there is an issue of fact as to whether Halloran wholly or partially executed the alleged oral joint venture agreement. If he did, he may be entitled, as Judge Friendly suggested, to an accounting or possibly to other equitable relief, even though the statute of frauds would bar an action at law. But all of these issues involve questions of fact, and therefore their resolution must await a trial on the merits.

*Halloran,* 618 F.Supp. at 1219–21.

Although Mrs. Rivkin suggests in her affidavits that the proposed joint venture was to last only until a written agreement was prepared, in the undisputed absence of such a writing, the terms of the agreement under her own construction would not be performed within a year. For the reasons enunciated in *Halloran,* the claims under the oral joint venture set forth in the First and Fifth causes of action are barred by the General Obligations Law § 5–701a(1).

### III. *The Fraud Cause of Action is Dismissed*

■ The third cause of action alleges fraud and the making of a material misrepresentation; namely, that Dr. Coleman never intended to perform the oral agreement between the parties. New York authorities have consistently held an intent not to perform a contract does not convert an action to enforce the agreement for failure of performance into an action for fraud. The distinction between the misrepresentation of a ma-

terial fact and an intention is clearly drawn. *Chase v. Columbia Nat'l Corp.*, 832 F.Supp. 654, 660 (S.D.N.Y.1993) (citing *Scally v. Simcona Elec. Corp.*, 135 A.D.2d 1086, 523 N.Y.S.2d 307, 308 (4th Dep't 1987); *Trusthouse Forte (Garden City) Mgt., Inc. v. Garden City Hotel, Inc.*, 106 A.D.2d 271, 483 N.Y.S.2d 216, 218 (1st Dep't 1984); *Freyne v. Xerox Corp.*, 98 A.D.2d 965, 470 N.Y.S.2d 187 (4th Dep't 1983); *Regnell v. Page*, 54 A.D.2d 540, 387 N.Y.S.2d 253 (1st Dep't 1976); *Value Time, Inc. v. Windsor Toys, Inc.*, 700 F.Supp. 6, 7 (S.D.N.Y.1988)). The Third cause of action is therefore dismissed.

### IV. *The Motion to Dismiss the Equity Causes of Action is Denied*

As set forth in the *Halloran* opinion quoted above, the complaint here adequately alleges a partnership at will with consequent fiduciary duties. The motion to dismiss the Second and Fourth causes of actions is therefore denied.

### Conclusion

For the reasons set forth above, summary judgment is granted to dismiss the First, Third, and Fifth causes of action, and summary judgment is denied as to the Second and Fourth causes of action.

It is so ordered.